UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
United States of America

                                  **11-CR-893-04** (PAC)

    -against-


Danette Stefanelli

                      Defendant.
--------------------------------------------------------X


# DEFENDANT DANETTE STEFANELLI'S
# MEMORANDUM IN AID OF SENTENCING



                                James J. DiPietro, Esq.
                                Attorney for Defendant
                                Danette Stefanelli
                                186 Joralemon Street
                                Brooklyn, New York 11201
                                (718) 875-4207

# TABLE OF CONTENTS

page

I    Preliminary Statement -------------------------------------    1

II    Sentencing Factors To Be Considered
Under Section 3553 -------------------------------------    3

III    History and Characteristics of
Danette Stefanelli -- -------------------------------------    5

IV    The Offense Conduct -------------------------------------    11

V    Acceptance of Responsibility And
Collateral Consequences Suffered
By The Defendant As A Result
Of Her Guilty Plea ------------ -------------------------------    12

VI    The Defendant's Gay Lifestyle
Makes Her A Vulnerable
Person With The Potential Of
Of Victimization If Incarcerated -----------------------------    14

VII    Available Types Of Sentences --------------------------------    16

VIII    No Fine Should Be Imposed ----------------------------------    18

IX    Conclusion ----------------------------------------------------    19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
United States of America

                                 11 CR 893-04 (PAC)

      -against-


Danette Stefanelli
                Defendant.
-------------------------------------------------------X


## DEFENDANT DANETTE STEFANELLI'S
## MEMORANDUM IN AID OF SENTENCING

### I. Preliminary Statement

      This memorandum is respectfully submitted in connection with the sentencing of Danette Stefanelli scheduled for September 12, 2013 at 3:30 P.M. Ms. Stefanelli has pled guilty to Count 1 of the above-referenced indictment charging her with conspiracy to commit health care fraud in violation of Title 18, United States Code, Section 1349. Ms. Stefanelli's history, character and family circumstances support a finding that leniency is appropriate pursuant to the sentencing factors reflected in 18 U.S.C. §3553(a).

      I write to present a far more balanced picture of the person the Court is about to sentence. As is typical in virtually all criminal matters which are resolved through a guilty plea, the only information now before the Court with respect to Ms. Stefanelli is her admitted participation in criminal conduct. There is, however, a starkly different side of this defendant which I believe will assist in Your Honor's difficult task of determining an appropriate sentence for her which, as the Court knows must be "sufficient but not greater than necessary" for the crime to which she has pleaded guilty and for which she has taken full responsibility.

To further this last purpose and to supplement Part C of the PSR, I am enclosing for this Court's review various letters written on behalf of my client Danette Stefanelli. While it is never easy to convey the essence of a person with words alone, we have been greatly helped by Ms. Stefanelli's parents, siblings and family. Whether written by her mother, sister, or her brother, these letters strike the same chords. They all attest to the following attributes- Ms. Stefanelli's dedication to her family, her selflessness, her strength through adversity, and her willingness to help others. Their letters are attached (see defendant's Exhibit 1-10).

It is clear that imposition of sentence by Your Honor will be, in many respects, a positive event for Danette and her family. Hopefully, sentence will represent a dividing line between her total failure of judgment in having engaged in this criminal conduct for which she is responsible and for which she has taken full responsibility. With the Court's wise judgment, a brighter future --- of which Danette is clearly capable--- will be hers. Sentencing will also bring an end to the strain and uncertainty which has loomed over the entire Stefanelli family since her arrest almost two years ago.

However, before continuing, I must be clear that it is hardly my intention in this memorandum to attempt to minimize the seriousness of the offense for which Danette Stefanelli has accepted complete responsibility or the nature of what she has done. As is discussed more fully below, my client understands quite clearly the crime she committed and is extremely remorseful and is prepared to be sentenced.

Nevertheless, even in this, the age of Sentencing Guidelines, albeit discretionary/advisory guidelines, the true measure of any defendant cannot be taken in an isolated fact pattern or even in an isolated series of transactions. Rather, in evaluating what sort of punishment must be meted out to achieve some purpose of general or specific deterrence or rehabilitation, a much broader view of a defendant must be taken into consideration. In any system of structured justice, that view must necessarily include the nature of the defendant's life as well as the cost of this criminal conduct to her as she approaches sentencing.

## II. <u>Sentencing Factors which "Shall be Considered" under Section 3553</u>

Surely the Court is far more familiar than counsel with the fact that post-Booker, the guidelines are not mandatory, but are to be considered as merely one of the relevant sentencing factors under 18 U.S.C. §3553(a)(1) and (2). (See <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005). The factors to be considered include, in addition to the applicable guideline range, and at least as importantly, the nature and circumstance of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. The statute also directs the Court to consider the kinds of sentences available, the guidelines and policy statements of the Sentencing Commission, including the guideline range, the need to avoid disparity and the need to provide restitution where applicable. Finally, as the Court also knows, the goal is to achieve the oft quoted paradigm from Section 3553(a): "… a sentence sufficient but not greater than necessary to" comply with the above purposes.

### A. <u>The Sentencing Guidelines</u>

Once again, this Court hardly needs counsel to remind it that <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738, 2005 WL 50108 at *16 (U.S. Jan.12, 2005) and <u>United States v. Crosby</u>, 349 F.3d 103 (2d Cir. 2005) held that "districts courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." <u>Booker</u>, <u>supra</u>, 2005 WL 50108 at *27. More recently, the Court has also held that the Guidelines are but one factor in determining a proper sentence. District Courts must consider, in addition to the Guidelines themselves, each of the sentencing factors contained in 18 U.S.C. §3553(a) and make a determination of "reasonableness" in connection with the sentence imposed. As recently as December, 2007, the United States Supreme Court in <u>Gall v. United States</u>, 128 S.Ct. 586 (2007) spoke quite clearly in holding that appellate courts can no longer require "extraordinary circumstances to

justify a sentence outside the guidelines." Indeed, <u>Gall</u> follows <u>Rita</u>, 127 S.Ct. 2456, 168 L.Ed.2d 203, 75 USLW 4471 (2007) in further deemphasizing the role of the advisory guidelines in the sentencing process. As the Court knows in <u>Rita</u> the Court held that the guidelines are but one factor to be considered in sentencing and that a District Court may <u>not</u> presume that the guidelines range is reasonable. A sentencing court accordingly has "wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." See <u>U.S. v. Cavera</u>, 550 F.3d 180,188 (2d Cir. 2008).

The government and counsel agree that the stipulated guideline range for this defendant is an adjusted offense level of 21. This level carries a range of imprisonment of 37-46 months. The Probation Department has not applied a two level enhancement for sophisticated means, which was included in the parties' plea agreement. The PSR therefore calculates this offense as a level 19. Level 19 carries a range of imprisonment of 30-37 months. The written plea agreement, however, permits, "the defendant to seek a sentence outside of the stipulated guidelines range, and suggest that the Court, sua sponte, consider a sentence outside of the stipulated guideline range, based upon the factors to be considered in imposing a sentence pursuant to Title 18 U.S.C. §3553(a).

4

### III.   The History and Characteristics
### Of Danette Stefanelli

I respectfully submit that this sentencing factor weights heavily in this defendant's favor. In considering who Danette Stefanelli is and what she has been able to achieve in her 46 years, the Court has in this Memorandum several letters written by the defendant's parents, siblings and family. There is good reason why the sample of letters provided are almost entirely from the defendant's immediate family. That reason is Danette has spent her entire life, outside of her work place, exclusively with her immediate family. These are the individuals whose lives Danette has affected profoundly, has made a difference, lives in which Danette was always there during the good and bad times, supporting and providing counsel. I will not repeat the defendant's history, which is accurately set forth in the PSR.

Ms. Stefanelli is presently 46 years old. She is one of seven children born to her parents Chester and Barbara Stefanelli. She has a twin sister named, Dina. Her father and mother are 80 and 79 years respectively. Her father is retired from his position as a telecommunications specialist at Western Electric. Her mother is a retired legal secretary. The defendant presently resides with her parents in their home located in Roseland, New Jersey.

Ms. Stefanelli was a licensed chiropractor. In June of 1997 she received a Doctor of Chiropractic Degree from Life College located in Marietta, Georgia. In 1997 the defendant was granted a chiropractic license to practice in the state of New York. As a result of her plea of guilty in this case she has lost her license to practice chiropractics.

It is clear that no one knows Danette better than her mother and father, Barbara and Chester. They have written individuals letters to Your Honor describing their daughter's character, her remorse for the crime for which she has pleaded guilty to, and her invaluable assistance to them considering their age.

The defendant's mother, Barbara Stefanelli expresses the following about Danette:

> I am writing this letter on behalf of my daughter, Danette (Dana) Stefanelli, who is scheduled to be sentenced before you on

5

June 19, 2013. Dana and her twin sister, Dina, are the youngest of my seven children. They have five older brothers who adore them.

Dana has always been a loving daughter, sister and a wonderful aunt to her niece and nephews, who know they can count on her in any situation, oftentimes putting their needs and wishes before her own. She is reliable, hard-working and has a take-charge attitude.

Because we are getting on in age Dana has moved back into the family home so that she can assist my husband and me with the everyday responsibilities of maintaining a house. It will be very difficult for us if she is not here.

Dana is basically a trustworthy and honest person who is also very caring and naïve. Her trust of other people has led her to make the biggest mistake of her life, which she will forever regret.

In making your decision concerning sentencing, I ask you to take into consideration her true character.

Thank You.

See defendant's Exhibit 1 attached

Similarly Danette's father writes this Court and describes the following regarding his daughter:

I am writing this letter on behalf of my daughter, Danette Stefanelli. Dana is, and always will be, a loving daughter, sister and aunt to all in our family. She has continually assisted my wife, Barbara, and me in countless numbers of ways.

Dana made a mistake. She realizes the error of her ways and deeply regrets what she has done.

Please, I ask that you consider her true character and all the good she has done, and continues to do for others, when deliberating her case.

Thank you.

See defendant's Exhibit 2 attached

6

The defendant's nephew Joseph Stefanelli, Jr. is presently employed as a law clerk to the Honorable Vagn Joensen, President of the United Nations International Criminal Tribunal for Rwanda in Arusha, Tanzanie. In a letter to this Court he makes the following observations about his aunt for Your Honor's consideration:

Dana has always been a loving daughter to my grandparents, and a devoted sister and aunt to her siblings, niece and nephews. As the oldest of her nephews, and having been born when Dina and Dana were only sixteen years old, I have had the experience of growing up with them being more like older sisters than aunts. My childhood is filled with fond memories of times spent with my Aunt Dana, and I cannot remember any important event in my life that she was not there for. From teaching me to be a good sport when I was just starting to participate in team athletics, to teaching me to drive when I was sixteen years old, and every Sunday dinner in between, I would not be the man I am today without my Aunt Dana. I watched her work hard to save her money and learned valuable lessons on work ethic from seeing her in her early jobs, and was inspired to continue through the many years of school required by my chosen profession by seeing how hard she worked to get to where she was.

Despite this terrible situation that she has gotten herself into, I remain convinced that my aunt is a good and decent person. She has always been there for whatever I may have needed, and would never hesitate to do anything for her family and friends, often without their even asking. I believe that her cooperation and admittance of her wrongdoing are a testament to her realization of the terrible mistake she has made, which she will forever regret.

Moreover, my aunt has for some time now been caring for her aging parents at their home in Roseland, New Jersey. It is my firm belief that they will be the ones who suffer most from her absence for any extended period. I hope that you will also take this into consideration when determining her sentence.

See defendant's Exhibit 3 attached

7

Her older brother Mark, describes for this Court the care the defendant provided to her now deceased grandmother and presently to her parents. He informs this Court of Dana's true character and her determined ability to be a productive member of our society again. He writes:

My name is Mark Stefanelli. Dana Stefanelli is my younger sister. She is one of seven children in our family.

With the help of our parents, we have all attended college, yet she is the only one to have achieved an advanced degree. She was able to do this because she is, and always has been, a hard working person.

When our grandmother was unable to live on her own and it became necessary for her to move in with our parents, Dana was the one of us children who spent the most time with her and attended to many of her needs. Family has always been a very important part of her life. She has made a point to spend all holidays and special celebrations with her family. She has always been the first one with gifts for all of the nieces, nephews and grandchildren.

As our parents have aged (as of this date, dad is 81 and mom is 79) Dana has moved into their house to help them with whatever needs they may have. I know that whatever challenges her current situation may have presented her, she has been preparing to restart her life and is already looking forward to being able to have a productive working career that can be the beginning of the of the next phase of her life.

I, along with my brothers, sister and parents, are ready to help Dana in any way possible to facilitate the onset of this next phase.

I believe Dana has learned and extremely valuable lesson and will live her life with new purpose at the conclusion of this trying time.

See defendant's Exhibit 4 attached

8

Her three other older brothers – Chester, Joseph and Gary – describe their younger sister as "the glue that holds the family together and my (our) elderly parents would suffer greatly without her.

See defendant's Exhibit 5,6 and 7 attached

Her twin sister Dina Crummy expresses the following to Your Honor:

The unfortunate circumstances that present themselves to Dana right now are a challenge for her, but knowing Dana she will do what is needed to be done to correct them. She will take on whatever is needed to start down the path to the next phase of her life.

We will all be there to help Dana start this next phase. I know she has learned many valuable lessons from these circumstances and wants to move forward into the next phase of live.

See defendant's Exhibit 8 attached

Michelle Coiro, who has known the defendant and her family for over 20 years lends insight to the defendant's character with the following:

Although, I am not a direct family member of the Stefanelli family, I have known Dana and the Stefanelli's for over 20 years. I have spent many holidays, Sunday dinners, and other family occasions with Dana and her family. I was extremely surprised when I heard of the charges being filed against her. It seems completely out of character for her to be involved in such things. In my years of knowing Dana, she has always been kind hearted, generous, and the first to help you when you were in need.

Unfortunately, good people sometimes do bad and things and make poor choices. If that is the case here, then I believe that while Dana was making these poor decisions she was under the influences of others and although, I do not agree with what she took part in, I do know that her character is much better than that and she has been remorseful ever since.

9

I also believe that the law is the law but, I respectfully ask that you understand and consider that Dana truly is a good hearted person and is valued by many people. If given the chance, I know Dana will focus her energy on correcting what she has done and getting back on track.

See defendant's Exhibit 9 attached

In <u>U.S. v. Adelson</u>, 441 F.Supp 2d 506 (SDNY 2006), Judge Jed S. Rakoff reasoned when considering various letters written on behalf of the defendant that,

> . . . Adelson's good deeds were not performed to gain status or enhance his image. Most of them were unknown to all but a few people until the time of his sentencing. But, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, "the history and characteristics of the defendant."

In the letters cited as well as the others attached, various acts of kindness, to family, and friends are put forth. I will not recount those facts here but respectfully refer to those materials as exhibits. I do submit, however, that the sort of character and generosity which these letters speak of should inform the Court's decision in sentencing Danette Stefanelli.

## IV.  The Offense Conduct

On February 13, 2013 the defendant Danette Stefanelli pleaded guilty to count 1 of the indictment charging her with a conspiracy to commit health care fraud in violation of Title 18 United States Code, Section 1349.

Ms. Stefanelli was the owner of AMD Chiropractic which rented space at Lenox Hill Medical Clinic. Lenox Hill Medical Clinic was run by co-defendants Alla Smirnov and Marina Bluvstein. The Lenox Hill Medical Clinic referred patients to AMD Chiropractic. Some of the bills submitted by the defendant to health care insurance companies between March of 2008 and December 2010 were fraudulent.

Danette Stefanelli allocuted at the time of her plea to the following:

From in or about March 2008 to December 2010 in the Southern District of New York and elsewhere I agreed with other individuals to commit health care fraud.

In my capacity as a chiropractor some of the bills I submitted to insurance companies for re-imbursement contained claims for services that were not actually performed.

Myself and others did this with intent to obtain money from various insurance companies which was not rightfully ours.

The offense the defendant has pleaded guilty to is clearly non-violent. Danette has no history of any other misconduct or aggressive behavior. I submit that Danette poses no risk or danger to the community and am confident this Court will balance her life's hard work at legitimate employment against the lapse of judgment that brings her before this Court. Her offense conduct is clearly aberrational in view of her personal history and contributions to her family.

11

## V.  Acceptance of Responsibility And Collateral Consequences Suffered By The Defendant As A Result Of Her Guilty Plea

The conspiracy pleaded in count one of the indictment spans a time period "from in or about March 2008, up to and including in or about December 2011 . . . ." See indictment para 3 (emphasis added)

As noted in Point IV above the defendant's plea allocution covered up to the latter part of 2010. As accurately reflected in paragraph 30 of the PSR the defendant, "left the clinic in October of 2010", approximately one year prior to her arrest in October of 2011. I bring this fact to the Court's attention because it demonstrates my client's willingness to accept responsibility and put an end to her criminal conduct long before her arrest. Lenox Hill eventually closed down and re-opened but Ms. Stefanelli would no longer be associated or rent space from her co-defendant's. She simply wanted "out".

Danette explained to her probation officer that "she fully accepts responsibility for her actions and is embarrassed by her conviction." As a result of her criminal conduct she has "lost all she worked for (her chiropractic license and career)". She was apologetic to the Court, her family and any victims . . . . she expressed remorse for her actions and stated she has "learned a valuable lesson". See PSR para 30.

As indicated, the defendant has already been punished collaterally as a result of her plea of guilty. She has lost her license to practice chiropractics. See PSR para 62. As a result she is no longer gainfully employed and will have to seek a new occupation in the future. She presently lives home with her parents who are helping support her. See PSR para 70.

The defendant's plea of guilty relieved both the Court and the Government of pre-trial motion practice and trial and thereby conserved substantial judicial resources by accelerating the resolution of this matter. Ms. Stefanelli was one of the first defendant's through counsel to meet with the government to resolve her case via a guilty plea. The government's interest in a global resolution of this matter became apparent during these early meetings. Ms. Stefanelli and her counsel contributed to those efforts in

helping to each a global resolution. This further underscores her acceptance
of responsibility.

## VI The Defendant's Gay Lifestyle
## Makes Her A Vulnerable
## Person With The Potential Of
## Of Victimization If Incarcerated

Ms. Stefanelli is openly gay and has led a homosexual life style for most of her life.

Recent statistics released by the federal government have shown widespread prison rape in our state and federal prisons. Statistics compiled by a U.S. Justice Department agency indicate that "4-5 percent of the state and federal prisoners" surveyed reported sexual victimization in the year 2007. Nearly one in twenty prisoners reports being raped or sexually abused behind bars. See U.S. Federal Statistics Show Widespread Prison Rape, Report by Justice Department December 16, 2007. Defendant's Exhibit 11 attached. In particular inmates who are gay, transgender, young, mentally ill, or incarcerated for the first time and for non-violent offenses tend to be victimized sexually. See The Basics About Sexual Abuse in U.S. Detention, January 2009. Defendant's Exhibit 12 attached.

In U.S. v. Lara, 905 F2d 599 (2nd Cir 1990) the court reasoned that the vulnerability of a criminal defendant for sexual abuse is a proper ground for departure under Section 3553(b) of the United Sates Code. The Court explained that Congress did not limit sentencing courts to characteristics directly related to the crime in determining which factors warrant departure under 3553(b).

The Lara court concluded,

The district court did not abuse its discretion in downwardly departing from the Guidelines' range pursuant to § 3553(b) in the present case. The personal characteristics of Morales made him particularly vulnerable to inprison victimization. Assaults against vulnerable male or female prisoners make prison life especially dangerous for such individuals. Cf. Greene v. Meese, 875 F.2d 639, 641 (7th Cir.1989) (acknowledging that Bureau of Prisons will likely deny requests for relief from disciplinary sanctions allegedly imposed in retaliation for defendant's rejection of homosexual overtones); Roland v. Johnson, 856 F.2d 764, 769-70 (6th Cir.1988) (finding that jury could find defendant prison officials failed to effectuate policies

14

to prevent the sexual assault of plaintiff, a more delicate inmate, by two inmates, despite officials' knowledge of numerous sexual assaults at the prison). Extreme vulnerability of criminal defendants is a factor that was not adequately considered by the Commission and a proper ground for departure under § 3553(b). See Weinstein, A Trial Judge's First Impression of the Federal Sentencing Guidelines, 52 Alb.L.Rev. 1, 17 (1988). The district court had a rational basis for finding such circumstances here. (emphasis added)

We ask this Court to balance the defendant's sexual orientation as an additional factor when considering a just sentence in this particular case.

## VII **Available Types Of Sentences**

As counsel for Ms. Stefanelli, I believe that a sentence of probation combined with home detention, community service and/or intermittent confinement will provide sufficient punishment and that a term of imprisonment would be greater punishment than is necessary to meet the goals of the Sentencing Reform Act. The Supreme Court has recognized that a term of probation is a real punishment. As Judge John Gleeson recently wrote:

> [W]hen a judge chooses between a prison term and probation, she is not choosing between punishment and no punishment. Probation is less severe than a prison term, but both are punishment. And as the Supreme Court has recognized, probation is significant punishment:
>
> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer. Permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. Most probationers are also subject to individual 'special conditions' imposed by the court."
>
> In addition to standard and special conditions, there is an array of alternative sanctions -- home confinement, community service, and fines, for example – that allow judges to impose enhanced (and sometimes even constructive) punishment without sending the defendant to prison.

United States v. Leitch, 2013 U.S. Dist. LEXIS 27796 *59-60 (E.D.N.Y. Feb. 28, 20 13) quoting Gall v. United States, 552 U.S. 38, 48-49, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007). See also United States v. Bueno, 549 F.3d I I 76, 1181 (8th Cir. 2008)( affirming a sentence of probation where the advisory guidelines called for a sentence in the 37-46 month range); United States v. Ruff, 535 F.3d  999 (9th Cir. 2008) (health care fraud,

embezzlement, and money laundering sentence of supervised release plus confinement in local corrections center from Guidelines range of 30-37months); United States v. Howe, 543 F.3d 128, 130 (3d Cir. 2008) (obstruction and making false statement to government personnel sentence of probation and three months of home confinement from Guidelines range of 18-24 months).

In establishing the Guidelines and defining the duties of the Sentencing Commission, Congress expressed a clear preference for probationary sentences for non-violent first offenders. See 28 U.S.C. § 944 (j) (1988) ("[t]he Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense ... ") (emphasis added); see also United States v. Edgar, 971 F.2d 89 (8th Cir. 1992) (noting that Congress "express[ed] a strong preference for alternatives to imprisonment where the crime was not violent and the defendant was a first offender, as is the case here.")

Indeed, non-violent, first offenders like Ms. Stefanelli belong to the group of criminal defendants that historically has performed most successfully on probation, showing the lowest rates of both probation violations or revocation and recidivism. See, e.g., USSC, Recidivism and the First Offender at 17 (May 2004) (first offenders with no prior recorded contact with the criminal justice system have an "extremely low recidivism rate of 6.8 percent" and are "easily the most empirically identifiable group of guideline federal offenders who are the least likely to re-offend") available at ttp://www.ussc.gov/Research/Research_Publications/Recidivism/200405_Recidivism_First_Offender.pdf (last visited July 22, 2013). As the Sentencing Commission explained in another report:

> "Effective alternative sanctions are important options for federal, state, and local criminal justice systems. For the appropriate offenders, alternatives to incarceration can provide a substitute for costly incarceration."
>
> Alternative Sentencing at 20.

A sentence of probation, home confinement, community service and/or intermittent or community confinement, see U.S.S.G. 5C 1.1, would hasten Ms. Stefanelli's transition back to the work place and to becoming a

17

productive member of our society again while at the same time serving society's interest in deterrence.

## VIII <u>No Fine Should Be Imposed</u>

We recognize that the Court has the discretion to impose a fine. However, it is respectfully urged that no fine should be imposed. The defendant has agreed to be liable for restitution in the amount of $450,000. Any additional debt will serve only to cause additional financial hardship on the Stefanelli family.

Based on the defendant's financial profile, and the priority of restitution, the Probation Department has indicated that the defendant "appears unable to pay a fine." See PSR para 74.

18

## Conclusion

At the sentencing on September 12, 2013, I beseech the Court, for all the reasons set forth herein, to impose a sentence below the guideline range set forth in the defendant's plea agreement. While I concur with the plea agreement and its advisory guideline range which must, of course, be consulted but are only advisory, I submit a non-guideline sentence is appropriate. A sentence of probation combined with home detention, community service and/or intermittent confinement I believe will provide sufficient punishment. Given the unique facts at bar and all the factors to be considered under Section 3553(a), such a sentence is well within the Court's discretion. As the Court knows better than counsel, the goal to be achieved is a sentence which is "sufficient but not greater then necessary" under all the circumstances. A sentence below the advisory guideline range will clearly meet this statutory standard.

Dated: Brooklyn, New York
      August 15, 2013

Respectfully submitted,

James J. DiPietro
Attorney for defendant
Danette Stefanelli
186 Joralemon Street
Brooklyn, N.Y. 11201
(718) 875-4207

To: AUSA Rosemary Nadiri
    (by ECF)
    Dawn Doino
    U.S. Probation Officer